**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |
|---|---|
| VERONICA WOLFE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No.: 4:25-cv-01505-JMD |
| vs. | |
| AMDOCS, INC., THE INVESTMENT COMMITTEE OF AMDOCS, INC., and JOHN DOES 1-10, | |
| Defendants. | |

**<u>DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

A.   Plaintiff's Standing Argument Ignores Article III Requirements ............................... 1

B.   The Eighth Circuit's Meaningful Benchmark Standard Defeats
Plaintiff's Breach of Prudence Claim ...................................................................... 2

    1.   Invented Process Allegations are an Attempt to Avoid
Eighth Circuit Benchmark Requirements. ...................................................... 2

    2.   Plaintiff Ignores the Meaningful Benchmark
Requirement ................................................................................................... 4

    3.   The Difference in Rates Between the GIF and Purported
Benchmarks is Both Insufficient to Infer Imprudent
Process and Unreliable as Plaintiff Utilized Flawed
Methodology and Erroneous Calculations ....................................................... 5

C.   Plaintiffs' Monitoring Claim Should be Dismissed ...................................................... 7

D.   Plaintiff's Prohibited Transaction Claims Fail. .......................................................... 7

E.   Conclusion .................................................................................................................. 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. GreatBanc Tr. Co.*,
  835 F. 3d 670 (7th Cir. 2016)...............................................................................................3

\* *Barrett v. O'Reilly Auto., Inc.*,
  112 F.4th 1135 (8th Cir. 2024) ...........................................................................................3

*Carter v. Sentera Healthcare Fiduciary Comm.*,
  2:25-cv-16, 2025 U.S. Dist. LEXIS 165845 (E.D. Va. Aug. 11, 2025) ...............................3

\* *Clinton v. Baxter Int'l Inc.*,
  25-cv-3368, 2025 U.S. Dist. LEXIS 253857 (N.D. Ill. Dec. 3, 2025) .............................3, 7

*Doll v. Evergy, Inc.*,
  25-cv-0043, 2025 U.S. Dist. LEXIS 271639 (W.D. Mo. Dec. 10, 2025) ..............................3

\* *Eibensteiner v. Essilorluxottica USA Inc.*,
  3:25-cv-2443, 2026 U.S. Dist. LEXIS 92914 (N.D. Tex. Apr. 27, 2026) .........................4, 5

*Hawse v. Page*,
  4:20-cv-588, 2020 U.S. Dist. LEXIS 82382 (E.D. Mo. May 11, 2020) ............................1, 7

*Lacrosse v. Jack Henry & Associates, Inc.*
  23-cv-05088, 2024 U.S. Dist. LEXIS 134872 (W.D. Mo. July 11, 2024) ............................5

*Payne v. Hormel Foods Corp..*
  24-cv-545, 2024 U.S. Dist. LEXIS 168017 (D. Minn. Sept. 18, 2024)............................3, 5

*Rodriguez v. Hy-Vee, Inc.*,
  22-72, 2022 U.S. Dist. LEXIS 200906 (S.D. Iowa Oct. 21, 2022)........................................6

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
  780 F. Supp. 3d 870 (D. Ariz. 2025)....................................................................................4

\* *Tedford v. Equitable Fin. Life Ins. Co.*,
  2026 U.S. Dist. LEXIS 110344 (N.D.N.J. May 19, 2026)................................................7, 8

*Tussey v. ABB*,
  746 F.3d 327 (8th Cir. 2014)................................................................................................3

*In re Unisys Sav. Plan Litig.*,
  74 F.3d 420 (3rd Cir. 1996)..................................................................................................3

## Statutes

29 U.S.C. § 1113(1) ...........................................................................................................1

29 U.S.C. § 1113(2) ...........................................................................................................1

ERISA .................................................................................................................................8

Fed. R. Civ. P. 12(b)(1) .....................................................................................................1

Fed. R. Civ. P. 12(b)(6) .....................................................................................................1

U.S. Const. art. III..............................................................................................................1

Amdocs, Inc. ("Amdocs"), the Investment Committee of Amdocs, Inc. ("The Committee") (collectively, "Defendants"), submit this Reply Brief in Support of Motion to Dismiss Veronica Wolfe's ("Plaintiff") First Amended Complaint ("FAC") for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6).  *See* ECF No. 56-1, p. 1-2.[1]

### A.    Plaintiff's Standing Argument Ignores Article III Requirements.

Plaintiff's Opposition takes inconsistent positions.  First, she acknowledges she lacks standing to assert her insolvency or spread allegations; she recasts those points not as independent claims but merely as fact support for an imprudent process claim.  ECF No. 57, p. 10.[2]  She then reverses course, asserting that "each semiannual spread and rate reset was a [prohibited] transaction"—an allegation that appears nowhere in the FAC.  OP, p.23.  The Court should disregard these newly created facts buttressing the prohibited transaction theory, raised for the first time in her Opposition.  *Hawse v. Page*, 4:20-cv-588, 2020 U.S. Dist. LEXIS 82382, at *11-12 (E.D. Mo. May 11, 2020) (citing *Morgan v. Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (a complaint cannot be amended by briefs in opposition to a motion to dismiss)).

Her repackaged allegation does not cure Plaintiff's lack of standing.  Plaintiff cannot challenge the GIF based on a speculative future-risk-of-harm theory.  ECF No. 56-1, pp. 6-11.  Because she already cashed out of the Plan, she cannot plausibly allege future loss or injury, as required for Article III standing.  ECF No. 56-1, p. 5.

---

[1] For the Court's attention, Defendants acknowledge an error in their Memorandum in Support of Motion to Dismiss, ECF No. No. 56-1, p. 30.  The statute of repose provision should be 29 U.S.C. § 1113(1) and the statute of limitations provision should be 29 U.S.C. § 1113(2).

[2] Hereafter, all citations to the Plaintiff's Opposition (ECF No. 57) are referenced by OP, __.

     **B.**     **The Eighth Circuit's Meaningful Benchmark Standard Defeats Plaintiff's Breach of Prudence Claim.**

The Eighth Circuit has emerged as the undisputed leader in shaping meaningful benchmark standards in federal jurisprudence. Accordingly, to state a plausible prudence claim in this Circuit, a Plaintiff must plead plausibly that the fiduciary used a flawed process; absent that, the Eighth Circuit *requires* pleading a meaningful benchmark—not mere allegations of excessive costs or low returns. ECF No. 56-1, p. 12.

     **1.**     **Invented Process Allegations are an Attempt to Avoid Eighth Circuit Benchmark Requirements.**

Plaintiff admits having no actual knowledge of Defendants' fiduciary decision-making process. ECF No. 51, ¶ 77. Nevertheless, Plaintiff claims she alleges facts about Defendants' decision-making process as to the Prudential Guaranteed Income Fund ("GIF"). OP, pp. 12-13. That contention is false. The cited FAC paragraphs do not allege any facts regarding Defendants' decision-making process; they merely reflect Plaintiff's speculative views of what she believes a prudent fiduciary should have done. *Id.*; *see also* FAC, ¶¶ 77, 81, 84-99.[3] Because Plaintiff lacks standing to assert injury based on Prudential/Empower's solvency, her reliance on SEC "warnings," offshore reinsurance, and low surplus to liabilities ratios is immaterial and cannot salvage her imprudence claims. OP, pp. 5-7.

Plaintiff's Opposition brief cannot turn *speculation* about process into "facts" that avoid the meaningful benchmark standards required by the Eighth Circuit. Even her cited

---

[3] Plaintiffs assert that a prudent fiduciary would have leveraged the Plan's size to negotiate more favorable terms with the insurer or replaced the allegedly underperforming option with a safer or better-performing alternative. OP, p.12. She further claims that Defendants had opportunities to reassess the investment on a semiannual basis and that these assertions, combined with her allegations regarding failure to investigate the insurer, demonstrate an imprudent process. These allegations, however, are not factual allegations as to Defendants' actual process. Indeed, there are no allegations that Defendants failed to take any of these steps anywhere in the ECF No. 51, and Plaintiff concedes she has no actual knowledge as to whether Defendants took any of these actual steps. FAC ¶ 77.

cases do not support this contention.[4]  For example in *Clinton*, the court found that the plaintiff "plead[ ] no 'actual knowledge of the specifics of Defendant's decision-making process'" and that the claim failed without either real process allegations or meaningful comparisons.  *Clinton v. Baxter Int'l Inc.*, 25-cv-3368, 2025 U.S. Dist. LEXIS 253857, *7 (N.D. Ill. Dec. 3, 2025).[5]  In contrast, in *Doll v. Evergy, Inc.*, a motion to dismiss was denied after that court found significant wrongdoing in the defendants' investment decision-making process.  25-0043-CV-W-SRB, 2025 U.S. Dist. LEXIS 271639, at **9-10 (W.D. Mo. Dec. 10, 2025) (a case challenging a target-date mutual fund where defendants failed to adhere to the protocol set in their investment policy statement).  Here, there are no factual allegations about Defendants' decision-making process.  FAC, ¶ 77.  And like here where speculation is all that is asserted regarding process, the Eight Circuit *requires* courts to engage in the requisite meaningful benchmark analysis to determine whether the claimed breach is

---

[4] Plaintiff also relies on cases and evidentiary records transcending the motion to dismiss stage, inapposite here, involving fiduciary process deficiencies.  *Tussey v. ABB*, 746 F.3d 327, 332-33 (8th Cir. 2014) (trial evidence showed fiduciary process issues); *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 437 (3rd Cir. 1996) (summary judgment evidence allowed reasonable finding that fiduciary process as to GIC purchases were deficient).  Plaintiff's reliance on *Payne v. Hormel Foods Corp.* is likewise misplaced.  24-cv-545, 2024 U.S. Dist. Lexis 168017 (D. Minn. Sept. 18, 2024).  There, the court did not identify any specific defects in the fiduciaries' decision-making process but instead held that the plaintiff cited sufficient meaningful benchmarks and sustained underperformance.  *Id.*  Plaintiff's remaining out-of-circuit cases also fail to support the argument that she can state a claim without alleging meaningful benchmarks.  OP, pp. 12-13; *Carter v. Sentera Healthcare Fiduciary Comm.*, No. 2:25-cv-16, 2025 U.S. Dist. LEXIS 165845 (E.D. Va. Aug. 11, 2025) (unlike here, plaintiff expressly alleged the fiduciary had no process at all for monitoring the plan's investments—an allegation accepted as true and which supported independently a claim for procedural imprudence.); *Allen v. GreatBanc Tr. Co.*, 835 F. 3d 670, 680 (7th Cir. 2016) (challenging an ESOP valuation, the court recognized there were no allegations about process, but found plausible the allegation that the value of ESOP stock dropped dramatically post-sale).

[5] Plaintiff suggests Defendants miscite *Clinton*.  OP, p. 19.  However, the District Court Judge states that the error made there by Plaintiff should be corrected in the subsequent amended pleading.  *Clinton*, 2025 U.S. Dist. LEXIS 253857 at *20.

3

plausible.  ECF No. 56-1, pp. 11-13; *Barrett v. O'Reilly Auto., Inc.*, 112 F.4th 1135 (8th Cir. 2024).

### 2.      Plaintiff Ignores the Meaningful Benchmark Requirement.

Plaintiff claims she offers benchmarks, but none of them are meaningful. ECF No. 56-1, pp. 14-15.  As a result, Plaintiff grasps for the audit report, ancillary to the 2024 IRS Form 5500, to assert conclusory comparison criteria, rather than relying on more directly relevant sources such as the Fund Fact Sheet, which are in Plaintiff's possession.  FAC, ¶ 105 n.19; OP, p. 16; ECF No. 56-3.  While auditors' reports contain basic identification of the funds included in the Plan and their valuation, they are not designed to identify fund design or characteristics in the manner Plaintiff attempts.  Plaintiff's reliance on auditors' reports for that purpose reflects the FAC's lack of any proper comparators.[6]  *See Eibensteiner v. Essilorluxottica USA Inc.*, 3:25-cv-2443, 2026 U.S. Dist. LEXIS 92914, at **8-9 (N.D. Tex. Apr. 27, 2026) (dismissing a very similar complaint, holding no meaningful benchmark where instant Plaintiff's counsel relied on similar comparisons as here, including complaint allegations as to auditors' reports, to challenge a Prudential GIF, labeling Plaintiff's

---

[6] Plaintiff relies on the auditors' report to manufacture comparators, OP, p. 16, but that document has a limited and well-defined purpose.  It provides basic identification of the funds in the Plan to satisfy reporting and tax-related obligations; it is not intended to offer substantive descriptions of investment strategies or appropriate benchmarking comparisons. *See Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 878-79 (D. Ariz. 2025) (IRS Form 5500 filings are "backward-looking financial documents meant to report annual information regarding employee benefit plans.").  Plaintiff plainly recognizes this distinction, as she includes the relevant Fund Fact Sheet in the FAC and relies on that data when drafting allegations as to fund design.  FAC, ¶ 105 n.19.  Yet, when it comes to describing and comparing the challenged investment, Plaintiff abandons that more informative Fund Fact Sheet in favor of the less descriptive IRS Form 5500.  That selective reliance is telling. The more likely explanation is that the Fund Fact sheet undermines the FAC by showing that the GIF is a broadly diversified fixed-income investment primarily composed of public bonds, commercial mortgages, and private placement bonds, that is dissimilar entirely to Plaintiff's chosen benchmarks, *i.e.,* an apples to oranges comparison.

"comparator investment key characteristics" "largely high-level" and lacking "substantial factual detail" regarding "structure, contractual terms, or specific risk exposures").

Plaintiff's reliance on *Payne* and *Lacrosse* fare no better.  The court in *Payne* found that despite the challenged fund and its comparators having distinguishable characteristics, "the[ ] accounts [we]re owned, operated, and managed by the same insurer," such that they shared the same management, as well as similar benefits and expectations to make comparable benchmarks.  2024 U.S. Dist. LEXIS 168017, at **19- 20.  That similarity is not present here.  Further in *Lacrosse v. Jack Henry & Associates, Inc.*, the reasoning is flawed, 23-cv-05088-SRB, 2024 U.S. Dist. LEXIS 134872 (W.D. Mo. July 11, 2024), and inconsistent with Eighth Circuit precedent because the opinion accepts superficial similarities and disregards material differences between the challenged fund and the proposed comparators. *Id.* at **9-10.  In doing so, *Lacrosse* relies on hindsight and accepts an apples-to-oranges approach consistently rejected by the Eighth Circuit.  2024 U.S. Dist. LEXIS 134872, at **9-10; ECF No. 56-1, pp. 14-15.

> **3.      The Difference in Rates Between the GIF and Purported Benchmarks is Both Insufficient to Infer Imprudent Process and Unreliable as Plaintiff Utilized Flawed Methodology and Erroneous Calculations.**

Even if Plaintiff's proffered comparators could be construed as meaningful benchmarks, the alleged credit rate differences between the GIF and the comparators are too insignificant to infer imprudence.  ECF No. 56-1, pp. 20-22.  Plaintiff's assertion that stable value funds are somehow exempt from the pleading standards governing underperformance claims for other investments, such as mutual funds, is both wrong and disingenuous, as she selectively relies on the same cases to support other aspects of her claims. OP, pp. 12, 21. (citing *Doll*, 2025 U.S. Dist. LEXIS 271639).  Similarly, Plaintiff's claim that she is not alleging the GIF underperformance, OP, p. 5, is an attempt to sidestep the implications of

5

her own allegations, which depend entirely on "performance" comparisons.  OP, pp. 20-21.
That disclaimer only underscores what is already apparent: Plaintiff recognizes her
benchmarks are inapt.

Further, Plaintiff's use of cherry-picked stable value cases, with no meaningful
allegations regarding fiduciary process, structure, Circuit standards, or context, relying
instead on performance figures alone, lacks merit.  OP, p. 21.  Taken on Plaintiff's terms, the
Court would be required to conclude that any fund underperforming by 0.07% is imprudent.
*Id*.  Plaintiff does not argue with Defendants' assertion that the largest credit rate gap
occurred in 2022, when the GIF credited 1.65% and the alleged comparators averaged 3.56%.
*See* OP, pp. 20-21.  Instead, she misleadingly argues the difference in underperformance as
a percentage between the GIF and the "comparator's" rates each year was an average of
48.76%.  *See* OP, p. 21.  This is not a calculation of the difference between stable value rates,
which is the metric used by most courts.  *See, e.g.*, *Rodriguez v. Hy-Vee, Inc.*, No. 22-72, 2022
U.S. Dist. LEXIS 200906, at \*5 n.3 (S.D. Iowa Oct. 21, 2022) (explaining percentage based
comparisons can be "misleading" even when mathematically correct as "starting point[s] for
a comparison is low… even a small change… can produce a large change on a percentage
basis").  The actual rate is insignificant and does not infer imprudent behavior.  ECF No. 56-
1, pp. 21-22.

In any event, were the Court to find a 0.07% underperformance imprudent, Plaintiff's
claims are still implausible.  As stated in detail in Defendant's Motion to Dismiss, Plaintiff's
FAC is plagued with inaccuracies rendering the finding of imprudence implausible.  ECF
No. 56-1, pp. 16-20.  Plaintiff does not dispute the inaccuracies cited in Defendant's Motion.
*Id*.  Instead, Plaintiff attempts to reframe Defendants' arguments as factual disputes,
suggesting that the identified inaccuracies diminish Defendants' argument.  OP, pp. 19-20.
But Defendants do not raise factual disputes, they identify fundamental errors in Plaintiff's

6

benchmarks, errors that make her allegations implausible at the pleading stage.  ECF No. 56-1, pp. 16-20.  These pleading errors, like those in *Clinton*, could have been corrected before the FAC was filed; however, whether out of neglect or otherwise, these errors were not remedied.  *Clinton*, 2025 U.S. Dist. LEXIS 253857, at \*20.[7]  The Court cannot infer imprudence from these inaccuracies.  ECF No. 56-1. p. 20.

### C.      Plaintiffs' Monitoring Claim Should be Dismissed.

Wolfe does not dispute that if her claim for breach of fiduciary duty fails, so does her claim for breach of the duty to monitor.  *See* OP.  Because Plaintiff fails to state a claim for imprudence, her duty to monitor claim also fails.  *See* ECF No. 56-1, p. 23.

### D.      Plaintiff's Prohibited Transaction Claims Fail.

In her Opposition, Plaintiff creates a new prohibited transaction claim, arguing that each semi-annual spread and rate reset constitutes a distinct prohibited transaction.  OP, p. 23.  These claims fail: they are not asserted in the FAC.  *Hawse,* 2020 U.S. Dist. LEXIS 82382, at \*11-12.

Additionally, Plaintiff fails to allege plausibly any prohibited transaction claims.  In *Tedford v. Equitable Fin. Life Ins. Co.*, 25-cv-2180, 2026 U.S. Dist. LEXIS 110344, at \*\*13-17 (N.D.N.J. May 19, 2026), the court held that when a service provider's contract is formed, they are not a party in interest. Applying *Tedford*, if the agreement was in fact renegotiated at six-month intervals, Empower would not qualify as a party in interest at the time of the contract and these transactions would not constitute prohibited transactions.   Further describing the relevant statute, the Court held: "As for subsection (D), . . . a transaction pursuant to a valid contract does not give rise to ERISA liability." *Id.* (citing *D.L. Markham*

---

[7] The *Clinton* opinion was promulgated on December 3, 2025.  Plaintiff filed the FAC with these math errors and other errors identified in Defendants' First Motion to Dismiss (ECF No. 36) on February 27, 2026.

*DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins. Co.*, 88 F.4TH 602, 610 (5th Cir. 2024)).

Accordingly, Plaintiff's prohibited transaction allegations should be dismissed, as they are all transactions pursuant to a valid contract which do not give rise to ERISA liability.

### E.      Conclusion.

Plaintiff's Opposition (ECF No. 57) confirms that her claims must be dismissed with prejudice.  Plaintiff's Opposition misrepresents legal authorities, relies on outdated opinions and holdings, selectively omits essential information, concedes essential allegations, and fails to address Defendants' core dispositive arguments.  When the Court analyzes Plaintiff's FAC and Defendants' Motion under the Supreme Court's required context-specific review, Plaintiff's claims lack merit and should be dismissed.  ECF No. 56-1, pp. 5-6. The Court should grant Defendants' motion and dismiss Plaintiff's Complaint with prejudice.

Dated: June 8, 2026

**JACKSON LEWIS P.C.**

*/s/ Howard Shapiro*
Howard Shapiro**
René E. Throne**
Amanda Munguia**
Steven Sheesley**
601 Poydras Street, Suite 1400
New Orleans, LA 70130
Telephone: (504) 208-1755
Fax: (504) 208-1759
Howard.Shapiro@jacksonlewis.com
Rene.Thorne@jacksonlewis.com
Amanda.Munguia@jacksonlewis.com
Steven.Sheesley@jacksonlewis.com
**Admitted *pro hac vice*

Andrew D. Kinghorn, #66006MO
1 N. Brentwood Blvd., Ste. 1150
St. Louis, MO 63105
Telephone: (314) 827-3939
Fax: (314) 827-3940
Andrew.kinghorn@jacksonlewis.com

***Counsel for Defendants***

8

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2026, a true and correct copy of the above and foregoing document was filed with the Court using its CM/ECF system which will send notice of such filing to all counsel of record.

/s/ *Howard Shapiro*
Howard Shapiro